## IRENE CUEBAS

*v.*

## BANCO TERRITORIAL Y AGRICOLA.

Mayaguez, Equity, No. 144.

1. A "sociedad anónima" (commercial association), although it has no seal, is a corporation.
2. Such a corporation, organized in Porto Rico prior to the time of the American intervention, is, for jurisdictional purposes, a Spanish citizen.
3. The stockholders of such a corporation are presumed to be Spanish subjects.

Opinion filed July 31, 1908.

*Messrs. F. L. Cornwell* and *L. Feliu,* attorneys for complainant.

Cuebas v. Banco Territorial y Agricola.

*Mr. F. D. Mott, Jr.,* attorney for respondent.

RODEY, Judge, delivered the following opinion:

This cause has been pending since March, 1904. We filed an opinion in the matter with reference to the pleadings on June 1, 1907 (see 3 Porto Rico Fed. Rep. 68),wherein we enumerated the proceedings up to that time. Notwithstanding the views there expressed, counsel for respondent, on June 28, 1907, filed an additional plea, but this was stricken out at the hearing on April the 4th, 1908, thus leaving the issue as raised by the prior plea of June the 4th, 1904, which goes to the jurisdiction of the court for alleged lack of diverse citizenship.

On July 9, 1906, we held in Vallecillo y Mandry v. Bertran (2 Porto Rico Fed. Rep. 46) that, under existing law as to this island, where Porto Ricans appear as parties on both sides of any suit, this court is without jurisdiction in the premises. Shortly after this decision, complainant in the case at bar dismissed as to all respondents save El Banco Territorial y Agricola, which, in the complaint, is alleged to be a Spanish corporation. The plea now being considered traverses this allegation, and asserts that the respondent is a Porto Rican commercial association or business entity, and that hence, as the complainant is alleged to also be a Porto Rican, there exists no such diversity of citizenship as would give this court jurisdiction, and that hence complainant's remedy, if she has any, must be sought in an insular court.

Owing to the peculiar status of Porto Rico, and the unique situation of this court, so many controversies regarding jurisdiction keep arising, and take so much time, and result in such delay, as that at times we almost question the wisdom of estab-

IV. PORTO RICO—14.

Cuebas v. Banco Territorial y Agricola.

lishing a court of this character in a dependency or a territory, and sometimes feel that perhaps it would be better for all concerned if the judicial branch of such a government was modeled on that of New Mexico and Arizona, where questions of jurisdiction based on diverse citizenship cannot arise at all.

The matter here in issue is, in a measure, *stare decisis* as to this court, because a question that would appear to be practically similar was passed upon by a former incumbent of this bench in Borrero v. Compañia Anonyma de la Luz Electrica (1 Porto Rico Fed. Rep. 142) where it was held that "a corporation organized in a dependency or province of Spain, by Spanish authority, is a creature of the Spanish government. A corporation has the citizenship of the sovereignty that creates it, and its incorporators are presumed to be citizens of the state creating it."

We also had occasion ourselves to pass upon certain phases of citizenship of associations, limited partnerships, joint stock companies, etc., in the case of Santana v. Marquez, 2 Porto Rico Fed. Rep. 271, where we held that: (1) The diversity of citizenship necessary to give the court jurisdiction exists in a suit by a citizen of Porto Rico against a partnership organized under the laws of Porto Rico, whose members are citizens of Spain. (2) Such a partnership is neither a corporation nor such a joint stock association that the jurisdiction of this court can be predicated upon its supposed citizenship. (3) Such a partnership has no citizenship for jurisdictional purposes, whether general or "en comandita."

But, notwithstanding all this, the facts here are so peculiar, and the question involved is of such importance, that we feel a further discussion of the matter will not be amiss, especially as the decisions referred to were not appealed from.

Cuebas v. Banco Territorial y Agricola.

The facts here are about as follows: In the year 1894, while Porto Rico was still a dependency of Spain, certain parties organized the respondent bank under the Spanish code of commerce, which had, by Royal edict, some time previous been extended to Porto Rico. The parties who organized the concern, after having had many preliminary meetings among themselves, went before a notary, and set forth that they did so under § 117 of that code, and, as required by the said code, they then and there procured the notary to draw up a very lengthy and detailed statement of their organization in the nature of what we would call a constitution and by-laws, and filed the same, as required, in the local commercial registry. They fixed the time the concern had to run at seventy-five years. It appeared that, at such time, eighty-two shareholders appeared before the notary who drew up the statement, and that they held proxies for enough additional shareholders to make a total of upwards of four hundred, and that they had been duly empowered at a meeting previously held to represent practically all concerned for the purpose of organizing. The instrument set forth that the actual subscribers were, at that time, more than 3,000 in number, and that more than half the capital stock, as required by the code, had been paid for. The headquarters of the institution was fixed at San Juan, Porto Rico, and, so far as we can learn, was even then entirely local to Porto Rico, and has remained so ever since, doing no business and having no connection with the peninsula of Spain, save such as any bank in Porto Rico may have in the way of collections and the buying and selling of exchange. The concern did not have the right to issue currency, but issued, under the law, shares payable to bearer, which were transferable by assignment, save in a few

instances temporarily as to the officers of the concern. There was, it seems, at this same time, a regular national Royal Spanish bank in Porto Rico, with an exclusive right to issue currency; but this latter was created by direct Royal decree, while no Royal decree or edict of any kind was issued to this respondent, nor was its creation in any manner approved by the local governor general or any other person, it being organized apparently simply under the commercial code of the island. It is said that this same commercial code, under existing law, was continued in Porto Rico after the establishment of American civil government here, and that practically all the provisions under which this concern was organized are now in force under American occupation; but, as to this, we are expressing no opinion.

The concern, in so far as we can see, has all the essential attributes of a corporation as known to us in the states of the Union. It has a president and all other necessary officers. It enjoys perpetual succession under the terms of its organization and by reason of the transferable character of its shares of stock. We cannot find that it possesses a common seal, but we never could see what real essential necessity there was for that ancient common-law insignia as to corporate entities in the states of the Union. The code under which this concern is organized characterizes it as a "commercial association," and under such law it is made a commercial entity, that must sue and be sued under the name it adopts.

The puzzling question before us is, What is this concern at the present time in Porto Rico? Is it a joint stock company or a full-fledged corporation, and does that question make any difference as to our jurisdiction? Is its nationality at the

Cuebas v. Banco Territorial y Agricola.

present time Spanish or Porto Rican? Did all such corporations in Porto Rico cease on the change of sovereignty, or did they remain Spanish corporations, with their existing property rights and the right to continue to do business protected by the treaty of Paris? Or, on the other hand, did such a concern as this become at once, on the change of sovereignty, a Porto Rican commercial concern or association? It is admitted that, in and of itself, it has done nothing since the date of its organization under the Spanish *régime,* in Porto Rico or elsewhere, to change its status. That it has taken out no new charter—if there is in fact any law in Porto Rico under which that could be done, which we are not now deciding—under or since American occupation of the island, and has taken no license or other leave to continue to do business, but has continued its business, without change.

Counsel for complainant well states in his brief that "it may be admitted at the outset that the situation is unique, and that the law reports will be searched in vain for a decision upon similar facts."

Complainant, of course, contends that, as corporations are creatures of the sovereignty that creates them, this concern is still a Spanish association or corporation, and that hence the necessary diverse citizenship to give this court jurisdiction exists. In reply, counsel for the respondent bank claims that, although the concern was organized under the Spanish commercial code, during Spanish times here, still, even at the date of its organization, it was strictly local to Porto Rico, and that Spain, having ceded away the dependency where it was organized and alone doing business, the concern went with the cession. That it could not, if it wanted to, under the law and

the treaty, retain its original citizenship, if it ever had any in the personal sense. In this behalf he calls attention to Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. ed. 629, and to the many decisions of the Supreme Court of the United States following it, as sustaining his position that, while the rights of the concern must be respected, it retains no Spanish citizenship, and that therefore it is, under the code, a Porto Rican commercial association or entity at the present time. That, because of this, the diverse citizenship necessary to give this court jurisdiction in this case does not exist.

We have made some considerable inquiry as to what became of the corporations that surely must have existed in Porto Rico at the time of the change of sovereignty. We learn that some of them procured charters from some particular state of the Union, filed the same in Porto Rico, and proceeded to continue doing business. In some instances, the new concern became a holding company for the rights and property of the former concern, which was then permitted to remain in abeyance; in other instances, the new concern simply taking over the property and rights of the old. We have been unable to ascertain to a certainty that, since American occupation, the legislative assembly of Porto Rico has adopted any general incorporation law; but we find many statutes looking to the control and regulation of all sorts of corporations, and assuming their existence as local concerns and otherwise. Further, it is said to be common knowledge in Porto Rico that several of the supposed Spanish corporations are continuing business, and are, at least tacitly or directly, recognized by the local authorities. But we must not forget that the question here arises only because there is such a court as this into which complainant is seeking to bring

this respondent; for it is not questioned that, under the treaty, all rights of the respondent can and must be protected in the local courts.

However, notwithstanding that courts of the United States are of special and limited jurisdiction, and that all doubts as to that question should be resolved against it, still, in the light of the fact that a former incumbent of this bench, as stated, has virtually passed upon this same question, we do not think that we ought to disturb his ruling. We come to this conclusion for the further reasons that the concern was born under the Spanish law, that it appears to exercise all the necessary functions of a corporation, that nothing has occurred to change its personality since the change of sovereignty, and because it is no concern of this court, on this issue, whether it is continuing business in accordance with, or in contravention of, any local law.

Therefore we held that it is still a Spanish corporation, and all of its stockholders will be presumed to be Spaniards, under the authority of the decision of the Supreme Court of the United States in St. Louis & S. F. R. Co. v. James, 161 U. S. 545, 40 L. ed. 802, 16 Sup. Ct. Rep. 621, and cases cited.

In arriving at this conclusion we have in mind the language of Mr. Justice White of the Supreme Court of the United States in Garrozzi v. Dastas, 204 U. S. 73, 51 L. ed. 376, 27 Sup. Ct. Rep. 224, regarding the widened jurisdiction of this court under the act of 1901 (31 Stat. at L. 953, chap. 812), wherein he said that "in consequence of the enlarged character of the jurisdiction conferred by that act, and the obvious departure which it manifests from the principles controlling the jurisdiction of a United States court, as contradistinguished

Cuebas v. Banco Territorial y Agricola.

from a state court, we do not think the rule which demarks the line between the courts of the United States and state courts within the removal act should be held applicable to Porto Rico to the extent which might have obtained had the act of 1901 not been enacted."

The plea will, therefore, be overruled, and the respondent will be required to answer; but, owing to the absence of counsel for respondent in the States, time to file their answer will be given until the 1st day of November next, or to within five days after the sooner return to the island of said counsel, and it is so ordered.